JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Ramone Glover, appeals from the judgment of the Common Pleas Court, rendered after a jury verdict, finding him guilty of robbery and aggravated robbery with a firearm specification, and sentencing him to nine years incarceration. For the reasons that follow, we affirm.
 FACTS AND PROCEDURAL HISTORY {¶ 2} In September 2003, the Cuyahoga County Grand Jury indicated Glover on one count of robbery and one count of aggravated robbery with a firearm specification. Glover pled not guilty to the charges.
 {¶ 3} After a hearing, the trial court denied defense counsel's motion to suppress any pretrial and in-court identifications of appellant. Trial commenced but ended in a mistrial. Prior to the second trial, defense counsel filed a renewed motion to suppress and a motion to sever the counts for trial. The trial court denied both motions without additional hearing.
 {¶ 4} At the second trial, Geraldine Pinkston testified that in the summer of 2003, she was employed as a cashier/assistant manager at the BP station located at 4282 Monticello Boulevard in South Euclid. At approximately 12:30 p.m., she prepared a bank deposit of approximately $6000, which she put into a cloth bag. She then walked outside to her car, carrying the bag under her arm. Pinkston testified that as she reached the driver's door of her car, which was parked approximately ten feet away from the BP station, she noticed a black male running down the outside stairway of the building next door. The male jumped over a short concrete divider and then walked toward her. When he was approximately six feet away, he asked Pinkston whether she had a light. Sensing something wrong, Pinkston turned and began walking back to the BP building. The male grabbed her from behind, however, wrestled the money bag from her and ran behind the BP building. Pinkston ran into the BP station to tell her coworkers what had happened and then to the street to look for her assailant. She did not see him, but saw a small silver car coming out of the parking lot behind the BP station.
 {¶ 5} Pinkston testified that she looked at the male when he asked her for the light and observed that he was "tall, darkskinned and kind of a thin guy." She testified further that four days after the robbery, a detective from the South Euclid Police Department appeared at BP while she was working, showed her a photo array, and asked her to identify the person who had robbed her. Pinkston testified that she identified Number 5, appellant, as the robber. She testified further that she then signed her name and dated a photocopy of the photo array under Number 5. Pinkston also testified that she then wrote a statement in which she stated, "I identified photo five as the male who robbed me on July 10th, 2003." When she was asked if the man who robbed her was in the courtroom, however, Pinkston responded, "the man who I thought, I mean, who could be the guy who robbed me, yes." On cross-examination, Pinkston testified that appellant "look[ed] like the guy" who robbed her, but insisted she was "not saying under oath" that he was "absolutely" the person who robbed her.
 {¶ 6} Lloyd Blankenship testified that in the early afternoon of July 10, 2003, as he sat in his truck in the parking lot of the BP station, he saw a young woman come out of the station and walk to her car. He then saw a tall, thin, black male come up behind her and wrestle with her for a few seconds as he tried to grab something from her. When Blankenship saw what was happening, he called 9-1-1 on his cell phone and the police responded almost immediately. Blankenship subsequently met with a police detective, who showed him the photo array containing appellant's picture. Blankship testified that he did not make a positive identification of the robber, but picked numbers 1 and 5 as possible suspects.
 {¶ 7} Laneshia Paige testified that at approximately 12:30 p.m. on July 10, 2003, she was sitting in her car in the parking lot of the plaza behind the BP station. She saw a black male run from a stairway next to the BP station and begin struggling with a woman as if "he was trying to take something." She then saw him run to a gray car behind the BP station and climb into its open trunk. The trunk closed as the car sped off.
 {¶ 8} South Euclid Police Sergeant Carl Malone was on patrol on July 10, 2003. At approximately 12:30 p.m., he heard a radio broadcast regarding the robbery at the BP station and a description of the silver Dodge or Neon car involved in the robbery. Malone testified that as he drove around the area of the BP station looking for the car, he saw a silver Ford Escort go past him. Because it was similar to the car described in the radio broadcast, Malone followed it until he saw it turn into the driveway of a home at 1775 Hillview. When Malone turned his car around and drove past the house again, he saw a black male at the side door of the house. Malone got the license plate number of the car and "ran the plate" through the LEADS system.
 {¶ 9} Detective Raymond Adornetto testified that on July 12, 2003, he went to 1775 Hillview after Sergeant Malone informed him that the silver car he had followed to that address had been involved in a recent robbery in Cleveland. Adornetto testified that as he walked up the driveway, he saw a black male peering out of the garage window. Malone ordered the male, later identified as appellant, and his female companion out of the garage and then took pictures of each of them.
 {¶ 10} Back at his office, Adornetto prepared a photo array in which he placed appellant's picture as Number 5. On July 14, 2003, Adornetto showed the photo array to Geraldine Pinkston. According to Adornetto, she looked at it for a few seconds, and then picked out Number 5, stating, "That's him. He's the one who robbed me."
Gary Bennett testified that on July 15, 2003, he was working as the store manager at the Lube Stop located at 689 Green Road in South Euclid. Bennett testified that as he was standing at the cash register at approximately 7:25 p.m., a black male walked in the store through the open bay door. When he was about three feet away from Bennett, the male pointed a silver revolver at Bennett and said, "Just give me the money." He then told Bennett to get on the floor and told Prentiss Reddick, Bennett's coworker, to get a bag and put all of the money from the cash register into it. Before leaving, he told Reddick to go in the restroom and threw Bennet's cell phone into a pit in the floor of the store.
 {¶ 11} Bennett testified that he got up and called the police, who responded almost immediately. According to Bennett, a detective on the scene showed him a photo array of possible suspects less than five minutes after the robbery occurred. Bennett identified number 5, appellant, as the robber. Prentiss Reddick similarly testified that he identified number 5 on the photo array as the robber.
 {¶ 12} South Euclid Police Detective David Volek testified that he was in his office at approximately 7:45 p.m. on July 15, 2003, when he learned of the Lube Stop robbery. The suspect was described as a tall, thin, young black male with a mustache. Aware that Detective Adornetto had obtained an identification of the suspect in the earlier robbery at the BP station, Detective Volek took Adornetto's case file from his desk. He looked at the photo array in the file and determined that the individuals in the array matched the description of the Lube Stop suspect. Acting on a hunch, he took the photo array with him and responded to the Lube Stop. Detective Volek testified that both Bennett and Reddick separately identified Number 5 on the array as the robber.
 {¶ 13} After the trial court denied appellant's Crim.R. 29 motion for acquittal, the jury found him guilty of robbery at the BP station and aggravated robbery at the Lube Stop. This appeal followed.
 {¶ 14} Appellant raises five assignments of error for our review. Appellant's fourth assignment of error is dispositive of this appeal.
 THE PHOTO ARRAY {¶ 15} At the original hearing on appellant's motion to suppress, the State presented the testimony of Detectives Adornetto and Volek, who testified regarding the procedures used in assembling and presenting the photo array to the various witnesses. Appellant then requested that the trial court hear testimony from the three witnesses to whom the array had been shown with respect to the procedures used by the officers in showing them the array. The prosecutor informed the trial court that the three witnesses were in the hall outside the courtroom, ready to testify. The trial judge refused to hear their testimony, however, stating that whatever they had to say would be irrelevant to her decision.
 {¶ 16} In his fourth assignment of error, appellant contends that the trial court erred in not allowing the persons to whom the photo array had been shown to testify at the hearing on the motion to suppress. Appellant contends that these witnesses should have been allowed to testify because they may have presented testimony that conflicted with the detectives' version of events regarding the procedure used in showing them the photo array. We agree that the trial judge committed reversible error in excluding this testimony.
 {¶ 17} The law is clear that unreliable identification testimony is excludable under the due process standards of the United States Constitution. State v. Mosley, Cuyahoga App. No. 79463, 2002-Ohio-1101, citing State v. Salwan (May 30, 1996), Cuyahoga App. NO. 68713. "`When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances.'" State v.Murphy (2001), 91 Ohio St.3d 516, 534, quoting State v. Waddy (1992),63 Ohio St.3d 424, 438. The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state.State v. Brown (1988), 38 Ohio St.3d 305, 310.
 {¶ 18} Here, the trial judge apparently believed that the only issue relevant to the out-of-court identification was whether the photographs contained in the photo array were impermissibly suggestive. However, the issues presented by appellant in the hearing on his motion to suppress were not just the assemblage of the photo array, but also the procedureemployed in presenting the array to the victims.
 {¶ 19} In order to suppress an out-of-court identification, the court must find that the procedure employed was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. State v.Harris (Sept. 29, 1994), Cuyahoga App. No. 65681, citing Simmons v.United States (1968), 390 U.S. 377, 384; State v. Perryman (1976),49 Ohio St.2d 14, 22. It is abundantly clear that testimony from the witnesses to whom the photo array was shown is relevant and material to this issue.
 {¶ 20} By refusing to hear testimony from anyone other than the police officers, the trial court denied appellant the opportunity to present testimony that may have conflicted with that of the police officers regarding the procedures employed in presenting the photo array to the victims. In effect, the trial court adopted the premise that a police officer's testimony must be accepted as true. An officer's testimony is obviously subject to the sametests questions of accuracy and veracity, however, as any other witness' testimony.
 {¶ 21} Moreover, the defendant bears the burden of proving that the out-of-court identification was flawed. State v. Miller, Cuyahoga App. No. 80999, 2003-Ohio-164, at ¶ 31, citing State v. Harris (Sept. 29, 1994), Cuyahoga App. No. 65681. See, also, State v. Jells (1990),53 Ohio St.3d 22. Here, by refusing to hear testimony from the witnesses to whom the array had been shown, the trial court denied appellant a valid opportunity to meet his burden and to confront the witnesses. Contrary to the State's argument that only the State determines who to present as witnesses at a hearing regarding a motion to suppress an out-of-court identification, the defendant clearly has the right to call witnesses to testify at such a hearing.
 {¶ 22} By denying appellant's request to present testimony from the witnesses to whom the photo array had been shown, the trial court denied appellant a full and fair hearing regarding the photo array and identification procedures. Accordingly, appellant's conviction is reversed and the matter is remanded for a new trial.
 {¶ 23} Appellant's fourth assignment of error is sustained.
 MOTION TO SEVER {¶ 24} In his fifth assignment of error, appellant contends that the trial court erred by denying his motion to sever the robbery and aggravated robbery counts for trial. Appellant contends that he was prejudiced by the joinder of these counts because the jury could have considered evidence of one crime as indicative that he committed another unrelated crime. In short, appellant contends that the jury heard "other acts" evidence that would have been inadmissible if the counts had been severed. Because we are remanding this case for a new trial, we address this assignment of error.
 {¶ 25} Crim.R. 8(A) permits the joinder of offenses "if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, the trial court is required to order separate trials. See Crim.R. 14. A defendant claiming error in the denial of severance must affirmatively show that his rights were prejudiced and that the trial court abused its discretion in refusing separate trials. State v. Sapp, 2004-Ohio-7008, at ¶ 69, citing State v. Torres (1981), 66 Ohio St.2d 340, 343.
 {¶ 26} At the outset, we note that although appellant filed a pretrial motion to sever, the record reflects that he did not renew his motion at the close of the State's evidence or the close of all the evidence. Appellant's failure to do so waives any previous objection to the joinder of these offenses for trial, thereby failing to preserve the issue for appeal. State v. Owens (1975), 51 Ohio App.2d 132, 146; State v.Saade, Cuyahoga App. Nos. 80705 and 80706, 2002-Ohio-5564, at ¶ 13;State v. Fortson (Aug. 2, 2001), Cuyahoga App. No. 78240.
 {¶ 27} Even if appellant had renewed his objection to joinder, however, we are not persuaded that he suffered prejudice as a result of the joinder. Prejudice is not demonstrated if evidence of the other crimes would be admissible at trial as "other acts" evidence under Evid.R. 404(B) or if the evidence of each crime joined at trial is simple and direct. State v. Lott (1990), 51 Ohio St.3d 160, 163.
 {¶ 28} Evid.R. 404(B) permits the admission of "other acts" evidence if the evidence is "related to and shares common features with the crime in question," as long as it is used for purposes other than proving that the accused acted in conformity with a particular character trait. Statev. Lowe (1994), 69 Ohio St.3d 527, paragraph one of the syllabus. In this regard, appellant argues that the facts of the two cases are too dissimilar to support their joinder.
 {¶ 29} Assuming, without deciding, that the "other acts" evidence would have been inadmissible on this basis, we find that the evidence as to each case was simple and direct and capable of being segregated. Contrary to appellant's argument, we do not believe it difficult for the jury to consider that a gun was used in one robbery and not the other, and that some witnesses identified appellant as a possible suspect while others positively identified him as the robber. On this record, the jury was able to discern the evidence regarding each charge and, accordingly, appellant was not prejudiced by their joinder. Therefore, the trial court did not abuse its discretion in denying appellant's motion to sever.
 {¶ 30} Appellant's fifth assignment of error is overruled.
 {¶ 31} In light of our resolution of appellant's fourth and fifth assignments of error, we need not address appellant's first, second and third assignments of error. See App.R. 12(A)(1)(c).
Reversed and remanded.
Calabrese, Jr., P.J., and Kilbane, J., Concur.