DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Randall Morgan, appeals his conviction as imposed by the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On March 1, 2005, Defendant was observed making two left hand turns without a turn signal. Akron Police Officer, Eric Wood, made a traffic stop in the driveway of 773 Kling Street and discovered that Defendant had been driving with a suspended driver's license. Officer Wood placed Defendant under arrest and conducted a search of Defendant and the car. As a result of the search, several items associated with the manufacture of methamphetamines were found. With the landlord's permission, the police entered 773 Kling Street after Defendant had stated to them that it was his house. Once inside of the house, the police found a methamphetamine lab, the location and presence of which is not contested.
 {¶ 3} On March 9, 2005, an indictment was filed against Defendant charging him with illegal manufacture of drugs, in violation of R.C. 2925.04(A), a second degree felony; illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, a third degree felony; illegal use or possession of drug paraphernalia, in violation of R.C.2925.14(C)(1), a fourth degree misdemeanor; and finally, driving under suspension, in violation of R.C. 4510.11, a first degree misdemeanor.
 {¶ 4} On March 11, 2005, Defendant entered a written plea of not guilty to the charges and was released on bond. Defendant's bond was revoked on June 14, 2005, as a result of a second arrest based on additional criminal acts.
 {¶ 5} On June 14, 2005, Officer James Dawson of the Barberton Police Department observed Defendant making a turn without using his turn signal and driving without a front license plate. He stopped Defendant and discovered that his driver's license had been suspended. Defendant was arrested, and a search was conducted of Defendant's person and the vehicle he had been driving. The police found, again, a number of items consistent with a methamphetamine lab. The passenger of the car, Michael Stanley, told the police that some of Defendant's property was in his garage at 233 14th Street, and gave the police permission to look. There, the police located further items consistent with the operation of a methamphetamine lab.
 {¶ 6} As a result of Defendant's June 14, 2005 arrest, a supplemental indictment was filed on June 27, 2005, charging Defendant with an additional count of illegal manufacture of drugs, in violation of R.C. 2925.04(A), a second degree felony, and illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, a third degree felony.
 {¶ 7} Defendant filed a motion to sever the charges of the original indictment from those of the supplemental indictment, which was denied by the trial court. The case thereafter proceeded to a trial by jury. On August 8, 2005, the jury found Defendant guilty of the crimes of illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, illegal use or possession of drug paraphernalia, illegal manufacture of drugs, and illegal assembly or possession of chemicals for the manufacture of drugs. Two of the guilty verdicts stemmed from the supplemental indictment.
 {¶ 8} Defendant was convicted and sentenced to a term of four years in prison for illegal manufacture of drugs, two years for illegal assembly or possession of chemicals for the manufacture of drugs, 30 days for illegal use or possession of drug paraphernalia, four years for illegal manufacture of drugs, and two years for illegal assembly or possession of chemicals for the manufacture of drugs. The two four-year sentences for the two counts of illegal manufacture of drugs were ordered to be served consecutively to each other, but concurrently with the other sentences for a total prison term of eight years.
 {¶ 9} Defendant now appeals his conviction, asserting two assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The trial court erred in failing to grant Defendant's motion to sever the original charges from the charges supplemented in the indictment."
 {¶ 10} In his first assignment of error, Defendant argues that the trial court erred in denying his motion to sever the original charges from the additional charges set forth in the supplemental indictment. We disagree.
 {¶ 11} While Defendant did file a motion to sever in the trial court before trial, he failed to thereafter renew his motion at the close of the evidence presented at trial. We have previously held that "when [a] motion for severance was made prior to trial and was not renewed at the completion of the State's case in chief, or at the conclusion of all the evidence, it is deemed waived." State v. Mitchell (Feb. 25, 1981), 9th Dist. No. 9815, at 5, citing State v. Owens (1975),51 Ohio App.2d 132, 145-146. In State v. Glover, the Court noted that even if an appellant filed a pretrial motion to sever, failure to renew that motion at the close of the State's evidence or at the close of all of the evidence waived "any previous objection to the joinder of [the] offenses for trial, thereby failing to preserve the issue for appeal." 8th Dist. No. 84413,2005-Ohio-1984, at ¶ 26. As Defendant failed to renew his motion to sever, we find that he waived his right to raise the issue on appeal.
 {¶ 12} Notwithstanding the above, we note that joinder of offenses is favored, as a general rule, "to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish inconvenience to witnesses." State v.Rollins, 3rd Dist. No. 11-05-08, 2006-Ohio-1879, at ¶ 42, quoting State v. Powell (Dec. 15, 2000), 2nd Dist. Nos. 18095, 99-CR-631. Further, the Supreme Court of Ohio has indicated that joinder is to be "liberally permitted." Id., quoting State v.Schaim (1992), 65 Ohio St.3d 51, 58.
 {¶ 13} Pursuant to Crim.R. 8(A), joinder of multiple offenses is permitted when the charged offenses are "of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." In the case at hand, the two indictments relate to the same crime; both involve Defendant's involvement with the production of methamphetamines. Both indictments involve the same charges, the same chemicals, and, as mentioned above, the same crime. Accordingly, we do not find Defendant's argument to be well taken.
 {¶ 14} Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The verdict finding the Defendant guilty was against the manifest weight of the evidence; the evidence is not legally sufficient to support the verdict."
 {¶ 15} In his second assignment of error, Defendant argues that his conviction is against the manifest weight of the evidence as the evidence "did not indicate that the Defendant had any knowledge that the crack cocaine was in the house, nor did it indicate that she [s.i.c.] in any way exerted control over the methamphetamine labs[.]" None of the counts of either of the indictments relate to Defendant's possession or knowledge of crack cocaine, accordingly we will not consider this argument.
 {¶ 16} Defendant further argues that the trial court erred in denying his motion for acquittal. Specifically he states that "[t]here was insufficient evidence taken in the light most favorable to the state, upon which the trier of fact could reasonably find all the elements of attempted kidnapping and robbery beyond a reasonable doubt." We note that Defendant was neither indicted nor convicted of attempted kidnapping and/or robbery, and as a consequence we will not address this argument.
 {¶ 17} As three of Defendant's four contentions are entirely meritless due to the fact that they relate to crimes that Defendant was not convicted of, we will focus on the only remaining argument: Defendant's allegation that no evidence was introduced showing that he, in any way, exerted control over the methamphetamine labs.
 {¶ 18} When the manifest weight of the evidence is challenged, we weigh all of the evidence presented, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the lower court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In the case at hand, we do not find that Defendant's convictions were against the manifest weight of the evidence.
 {¶ 19} Defendant was convicted of violating R.C. 2925.04(A), illegal manufacture of drugs, which provides that "[n]o person shall knowingly * * * manufacture or otherwise engage in any part of the production of a controlled substance." Defendant was also convicted of violating R.C. 2925.041(A), illegal assembly or possession of chemicals for the manufacture of drugs, which provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance[.]"
 {¶ 20} Defendant's argument in support of his manifest weight argument, in its entirety, is as follows:
"The evidence, through the testimony of witnesses * * * did not indicate that [he] in any way exerted control over the methamphetamine labs[.]
"A significant amount of direct evidence was presented by officers with detailed testimony about how the labs were created and dismantled, but no evidence directly linked [Defendant] to either address where the labs were found. No fingerprints were taken of any items in either location, and [Defendant] was not found at either lab when he was arrested. Both times he was pulled over for minor traffic infractions. Further no personal belongings of [Defendant] were found at either location."
 {¶ 21} Defendant does not dispute the police stops and/or searches, nor does he contend that the evidence found does not relate to the manufacture of methamphetamines. Defendant does not dispute that there were methamphetamine labs found at the two locations; he merely claims that he did not own the labs.
 {¶ 22} Defendant contends that the State failed to prove that the methamphetamine labs belonged to him, and therefore failed to prove one of the essential elements of illegal manufacture/assembly of a controlled substance. Possession however, need not be actual; it may be constructive. Statev. Butler (1989), 42 Ohio St.3d 174, 175. Constructive possession will be found when a person knowingly exercises dominion or control over an item, even without physically possessing it. State v. Hankerson (1982),70 Ohio St.2d 87, syllabus.
 {¶ 23} The testimony and evidence presented at trial demonstrates that the jury did not lose its way and create a manifest miscarriage of justice in convicting Defendant. Officer Eric Wood testified that he had stopped Defendant in the driveway of 773 Kling Street and Defendant said that it was his house. Officer Wood further testified that he found several one inch by one inch small plastic zip lock baggies on Defendant's person and that the only time he had ever seen baggies like that was "to hold some type of narcotic."
 {¶ 24} Since Defendant's car had to be towed, the police officers were required to take an inventory of the vehicle. Pursuant to that search, they found a significant number of items consistent with the manufacture of methamphetamines.
 {¶ 25} Defendant then told the officers that the he was fixing up the house at 773 Kling Street until he moved in, and stated that it was currently vacant. He gave the officers the phone number of the landlord, Jack Hufnagel. When Mr. Hufnagel arrived, and a key to the premises had been obtained from the passenger of the vehicle, the officers entered the premises. It is uncontested that a methamphetamine lab was found inside of the house. Multiple specially trained police officers testified as to the presence of the methamphetamine lab.
 {¶ 26} John Hufnagel testified that he owned about ten rental properties, one of them being 773 Kling Street. He stated that he first met Defendant about a week prior to his arrest. The property at 773 Kling Street was in a severe state of disrepair, and Defendant had told Mr. Hufnagel that he would clean the property and perform the necessary maintenance if he could occupy it right away. Defendant additionally offered to pay Mr. Hufnagel $100 a week while he was cleaning up the property. Mr. Hufnagel agreed and gave Defendant the key to the property.
 {¶ 27} Thomas Duncan testified at trial and stated that he had been to 773 Kling Street with Defendant on 5 prior occasions. He stated that he had been using methamphetamine for at least a year, and that he would get the drug from Defendant for free. Mr. Duncan specifically stated that Defendant made the methamphetamine at 773 Kling Street, and identified a photograph of the house as the house where the methamphetamine had been made.
Q: "Do you know where [Defendant] would get the methamphetamine he gave you?
A: "Yeah.
Q: "Where?
A: "He would make it.
Q: "Do you know where he was making it?
A: "At the same house you showed me the photograph earlier.
Q: "The house you said you had been with him before about five times?
A: "Correct.
* * *
Q: "When you were at that house with [Defendant] what would you do?
A: "Well, I've helped him make meth there before."
 {¶ 28} Mr. Duncan stated that he helped Defendant move into the house at 773 Kling Street and knew that inside the boxes that Defendant had moved into the house contained "[s]tuff to make methamphetamine."
 {¶ 29} The above evidence demonstrates that Defendant owned and operated a methamphetamine lab at 773 Kling Street.
 {¶ 30} On June 14, 2005, Defendant was stopped by Officer James Dawson of the Barberton Police Department for driving without a front license plate and for turning without using a turn signal. Having discovered that Defendant's driver's license had been suspended, Defendant was again placed under arrest and the police took an inventory of the car he had been driving prior to having it towed. The search gleaned numerous articles typically used to manufacture methamphetamine.
 {¶ 31} Officer Steven Coburn responded to the traffic stop on June 14, 2005. He drove Mr. Michael Stanley, the passenger in Defendant's car, to his house, located at 233 14th Street, Barberton. Once at Mr. Stanley's house, Mr. Stanley told Officer Coburn that some of Defendant's property was in his garage, and gave the officer permission to look. In the garage, Officer Coburn found a cooler, and opened it. Immediately upon opening the cooler he was overcome with fumes and started to feel burning in his nose and throat. Officer Coburn knew that the chemicals inside of the cooler were methamphetamine related. He notified his superiors of the situation and went to the hospital to seek treatment for exposure to hazardous materials.
 {¶ 32} Mr. Stanley testified that Defendant had asked him for permission to use his garage to do small engine repairs. Mr. Stanley agreed, and in exchange Defendant had agreed to help him with certain projects around the house. During one visit to his garage, Mr. Stanley noticed that Defendant had set up "[a] lot of jars with liquids and a hot plate," and had asked to use some of Mr. Stanley's household chemicals. Mr. Stanley stated that "it wasn't something [he] wanted in [his] garage * * * [f]or fear * * * of losing [his] home as punishment for having drug paraphernalia." Asked if he knew that the items he saw were drug related, Mr. Stanley responded that he did because Defendant has told him on a prior occasion what "he was using the chemicals for and what he was assembling."
Q: "What did he say he was using the chemicals for?
A: "* * * [T]o make meth with.
Q: "Methamphetamine?
A: "Yes.
* * *
Q: "[W]ere you ever in the garage when [Defendant] was making the methamphetamine?
A: Yes.
Q: "Did you ever see the actual meth product?
A: "Yes.
Q: "How?
A: "[Defendant] showed it to me.
Q: "What did he say when he showed it to you?
A: "First time he showed it to me he just kind of took a baggie out and was telling me how valuable it was. You know, I think the number was $1500 worth of chemicals."
 {¶ 33} Mr. Stanley testified that Defendant had set up a methamphetamine lab in his garage. On June 14, 2005, before Defendant had been arrested, Defendant took Mr. Stanley to buy groceries. Defendant was repairing Mr. Stanley's car, and it was inoperable at the time. On the way to the grocery store, Defendant gave Mr. Stanley some money and asked him buy some decongestant pills, which he knew were used for the manufacture of methamphetamine. Mr. Stanley did buy the pills for Defendant, and shortly thereafter, Defendant was arrested.
 {¶ 34} Defendant took the stand on his own behalf and testified that he had nothing to do with either methamphetamine lab and that everything the other witnesses had said was a lie. He admitted that he had been using methamphetamine for over two years and that he was an addict, but denied that he had ever made methamphetamine. Defendant has not persuaded us that a manifest miscarriage of justice has occurred because the jury chose not to believe his testimony.
 {¶ 35} In a jury trial, matters of credibility of witnesses are primarily for the trier of fact, therefore, we must give deference to the jurors' judgment. See State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence offered by the prosecution. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See, also, State v. Warren (1995),106 Ohio App.3d 753, 760.
 {¶ 36} From the evidence presented, the jury could find that Defendant was guilty of illegal manufacturing of drugs and illegal assembly or possession of chemicals for the manufacture of drugs. The jury neither lost its way nor created a manifest miscarriage of justice in convicting Defendant. Accordingly, Defendant's second assignment of error is overruled.
 {¶ 37} We overrule Defendant's two assignments of error and affirm the decision of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J., Boyle, J., concur.