[Cite as *State v. Moore*, 2012-Ohio-2426.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 11CA0025 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER G. MOORE | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. CRB-10-10-01458 |

DECISION AND JOURNAL ENTRY

Dated: June 4, 2012

MOORE, Judge.

{¶1} Appellant, Christopher Moore, appeals from the judgment of the Wayne County Municipal Court. This Court affirms.

I.

{¶2} In the early morning hours of August 3, 2010, a silver Jeep pulled up to a private gasoline pump owned by and located at Bauman Orchards in Rittman, Ohio. After an occupant of the Jeep began to pump gasoline from the pump's nozzle, the Jeep was discovered by one of the owners of the Orchards. The Jeep left the scene. Shortly thereafter, police officers located the Jeep parked behind a multi-unit residence on Salt Street in Rittman. Several individuals were present at the Salt Street location, including Christopher Moore and his then girlfriend Ashley Holler. Holler ultimately reported to police that Moore had driven the Jeep to the Orchards and pumped the gas from the private pump. Moore was charged with theft in violation of R.C. 2913.02(A)(1).

**{¶3}** After a trial to a magistrate, the court found Moore guilty of theft and sentenced him to ninety days of incarceration. Moore timely filed a notice of appeal and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR NO. 1**

[MOORE] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶4}** In his first assignment of error, Moore argues that his trial counsel was ineffective for failing to move the trial court to dismiss the complaint due to insufficient evidence. We do not agree.

**{¶5}** This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland*, 466 U.S. at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id.* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

**{¶6}** The basis of Moore's ineffective assistance argument is that his trial counsel waived the issue of sufficiency of the evidence by failing to move to dismiss pursuant to Crim.R. 29. However, in *State v. Thornton*, 9th Dist. No. 23417, 2007-Ohio-3743, ¶ 13, we held that a

defendant's failure to move for a Crim.R. 29 dismissal at the close of evidence does not waive a sufficiency argument on appeal. However, because there was sufficient evidence to support Moore's conviction, Moore's argument fails.

{¶7} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶8} Moore was convicted of theft in violation of R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" Moore limits his sufficiency of the evidence argument to the element of obtaining or exerting control over the property of another. We shall limit our discussion accordingly.

{¶9} As part of the State's case in chief, it presented the testimony of Bill Bauman, who is a part-owner of Bauman Orchards in Rittman, Ohio, and lives across the street from the Orchards. On August 3, 2010, Bauman's wife woke him early in the morning, having heard a

car pull into the Orchards. Bauman went across the street and saw a car at the Orchards' private gas pump. The dome light was on inside the car, and he could see three or four passengers inside. Another individual was standing outside the car, appearing to pump gas into the car. Bauman called 9-1-1, but the car left. Bauman went over to observe the gas pump and saw the nozzle to the pump on the ground. He could tell that the hose had been pried open because gas was still "flowing out of the nozzle." Bauman stopped the gas flow, and noticed a knife and a blue glove on the ground.

{¶10} After police arrived, an officer escorted Bauman to Salt Street, where another officer had located what he believed to be the car involved. Bauman there identified the car as the same car he had witnessed in the Orchards, noting it was the same make and model and it had a temporary tag instead of a license plate. Bauman identified several photographs from the Orchards' security camera, portraying the car he observed on the morning at issue and several photographs of the car he later identified on Salt Street. Bauman also identified the knife and pictures of the knife that he observed on the ground near the pump.

{¶11} Ashley Holler testified that she is Moore's ex-girlfriend. While they were dating, on August 3, 2010, she and Moore were staying at a friend's house on Salt Street in Rittman. Holler owned a silver Jeep Cherokee, on which she had thirty-day tags. At some point during the late evening of August 2 or early morning of August 3, Moore, Holler, and two other individuals at the gathering, named Tasha and Mikey, left to go get cigarettes. Moore drove Holler's vehicle. However, instead of getting cigarettes, Moore drove them to Bauman Orchards. When they arrived, Moore removed blue medical gloves from the glove compartment. He then used his pocket knife on the nozzle of a gas pump, and attempted to fill Holler's vehicle's gas tank as well as some empty gasoline containers. However, Moore stated that the

owner of the Orchards had walked out, and he threw the gasoline containers into the car through the driver's side door, causing the car to smell of gasoline and causing gasoline to get on some of the occupants. Moore took off the blue gloves, but dropped one on the ground.

{¶12} Holler identified the knife admitted into evidence by the State as Moore's knife. She also identified the car in the photos from the Orchards' security camera and the photos of the car that Bauman had seen on Salt Street as her vehicle. She identified the glove in the picture as one of her gloves that was in her glove compartment, which Moore had used when pumping the gasoline.

{¶13} Officer Rodney Martin of the City of Rittman Police Department testified that he was on duty in the early morning hours of August 3, 2010. He and Officer Paul Fiocca were dispatched to the Orchards following a report of a suspicious car and possible theft. When they arrived, Officer Martin noticed the gas tank nozzle was down, and a lot of gas had spilled on the ground. There was a strong odor of gasoline present. He then left the Orchards to patrol the surrounding area for suspicious cars while Officer Fiocca stayed and spoke with Bauman at the Orchards. While Officer Martin was patrolling, Officer Fiocca called in Bauman's description of the suspected car to Officer Martin. Officer Martin recalled a similar car, about which he had received a report approximately one week before. At that time, the car was associated with a Christopher Moore who frequented the Salt Street area. Officer Martin located the car behind an apartment complex on Salt Street. The car engine was warm, and there was a strong odor of gasoline surrounding it. After the officer arrived, individuals began exiting the complex, including Moore and Holler. Holler admitted her ownership of the Jeep, and the officer stated that Holler was going to be charged with receiving stolen property, at which point Moore stated, "I did it, I did it. Just arrest me." The officer noted that Moore smelled of gasoline.

{¶14} Officer Fiocca testified that when he arrived at the Salt Street complex to join Officer Martin, he approached the Jeep and noticed a very strong odor of gasoline. After a few minutes of speaking with the individuals at the complex, Officer Fiocca did not feel like they were making progress, and he returned to speak with Bauman. Bauman showed him the security camera video footage, and the officer could see a silver Jeep Cherokee with a slightly discolored area and several dents, which he recognized as Holler's Jeep that he had just seen at Salt Street. However, the officer could not discern the identity of the Jeep's occupants due to the poor picture quality of the footage. The officer returned to the gas pump, where he could see that there was a "huge amount" of fuel that spilled, and a knife and glove on the ground. The officer then returned to Salt Street. While speaking with the group, he indicated that he was going to tow the Jeep and Holler would be charged, at which point Moore said, "Okay, I did it." But when the officer replied that they would still have to tow the vehicle, Moore stated, "Nah, I didn't do it."

{¶15} Based upon the evidence provided by the State, Moore argues that there was no evidence demonstrating that he obtained any of the gasoline from the private pump. However, Bauman testified that the offender was attempting to pump gasoline and that the nozzle was still leaking gasoline after the offender left the scene. Bauman and the officers testified that the ground area around the pump was soaked in gasoline and the area smelled strongly of gasoline. Further, the officers testified that the Jeep and Moore smelled strongly of gasoline. Thus, there was sufficient evidence presented from which a reasonable trier of fact could have determined that Moore obtained or exerted control over the gasoline. Further, a person need not "obtain" the property of another to be in violation of the statute, so long as there is sufficient evidence that the person exerted control over another's property with the intent to deprive the owner of the

property. *State v. Brienzo*, 9th Dist. No. 3209-M, 2001 WL 1475808 (Nov. 21, 2001) (defendant committed a theft where he exerted control over DVDs in a department store although he did not leave with the DVDs). Accordingly, Moore's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

[MOORE]'S CONVICTION FOR THEFT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶16} When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating the evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶17} In his merit brief, Moore limits his second assignment of error to challenging the weight of the evidence in respect to proof of the identity of the offender, and argues that the weight of the evidence did not establish the element of obtaining or exerting control over the gasoline. Accordingly, we shall limit our discussion to those elements of the offense.

{¶18} At trial, the defense presented the testimony of Michelle Jason and Tasha Malott. Jason testified that, on the evening of August 2, 2010, she was having a gathering at her house on Salt Street, and Moore and Holler were present at this gathering. Moore left her house twice. The first time, Moore went with Holler to purchase some drinks in the late afternoon, early

evening hours of August 2, 2010, and they returned to her home directly afterward. The second time, Moore went outside and moved Holler's car from the front of the complex to the back of the complex. Jason explained that Moore moved the vehicle because the last time it had been parked in front of the complex, $40.00 had been taken from the visor. Moore moved the vehicle just prior to the police arriving. At some point during the gathering, Jason recalled that Holler left to get cigarettes, and Jimmy Walker, Jason's boyfriend, went with her.

{¶19} Malott testified that she was present at Jason's gathering on the day at issue. She did not leave the gathering. Malott recalled Moore leaving once that evening with Holler to get drinks. Holler later left without Moore to get cigarettes. Malott further recalled that Moore had driven Holler's Jeep from its location in front of the complex to behind the complex just shortly before police arrived. Malott further testified that she did not leave Jason's home at any time during the gathering.

{¶20} However, as set forth in our discussion of Moore's first assignment of error, Holler testified that she, Moore, and Malott and another individual left in her Jeep to purchase cigarettes, but, instead, Moore drove her Jeep to the Orchards. There he used his pocket knife and blue gloves to obtain gasoline from the Orchards' private pump. The officers testified that Moore smelled of gasoline shortly after the theft. Bauman and the officers testified that gasoline had soaked the area around the pump.

{¶21} On appeal, Moore points to alleged bias in the testimony of Holler, arguing that she was attempting to remove culpability from Walker and place it on Moore. In support, Jason testified at trial that shortly after this incident, Holler and Walker began dating. However, the trial court had the opportunity to consider the conflicting testimony and potential bias, and "is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist.

No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). We cannot say the trial court's resolution of the testimonial inconsistencies was unreasonable. *See State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, ¶ 18, citing *State v. Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, ¶ 35 ("A conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events."). Therefore, we cannot say that the trial court clearly lost its way in determining that Moore left the gathering to drive to the Orchards.

{¶22} Further, as set forth in our discussion of Moore's first assignment of error, a person need not "obtain" the property of another to be convicted of theft; instead, the State could prove that Moore exerted control over the Orchards' gasoline with the intent to deprive the Orchards of the gasoline. *See Brienzo* at *1. Through Holler's testimony, the State presented evidence that Moore exerted control over the gasoline intending to deprive the Orchards of its property by his actions in beginning to fill the gasoline containers and the Jeep's gas tank. Additionally, Bauman and the officers testified that the Orchards' gasoline had spilled on the ground as a result of these actions, thus depriving the Orchards of the gasoline.

{¶23} After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice in finding Moore guilty of theft.

### III.

{¶24} Accordingly, Moore's first and second assignments of error are overruled, and the judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

BRIAN L. SUMMERS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA E.WILES, Assistant Prosecuting Attorney, for Appellee.