DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Andy Tran, aka Phi Thuyen, appeals from his conviction and sentence in the Summit County Court of Common Pleas for three counts of felonious assault. We affirm in part, reverse in part, and remand for re-sentencing.
 I. {¶ 2} On March 17, 2005, the Summit County Grand Jury indicted Appellant along with co-defendant Peter Tran, on six counts of felonious assault, in violation of R.C. 2903.11(A)(2), second-degree felonies. Appellant pled not guilty to the charges. There were two other co-defendants charged, to wit, Tam Nguyen and Vi Tran. The charges arose from a stabbing incident during a two year old child's birthday party on December 25, 2004. The party was being held at Toan Chung's house in Akron, Ohio. Seven individuals were wounded as a result of the incident.
 {¶ 3} A joint jury trial was held for all four defendants. The trial court granted Appellant's Crim.R. 29 motion on two counts. A jury found Appellant not guilty of one of the felonious assault counts, and found him guilty of felonious assault as charged in counts nine, ten, and twelve in the direct/supplemental indictment. These latter counts involved the victims Chau T. Nguyen, Trinh D. Hoang, and Som Huy Nguyen, respectively.
 {¶ 4} The court sentenced Appellant to five years on each of the counts, a non-minimum sentence, to be served concurrently. At the sentencing hearing, Appellant raised a constitutional challenge to his sentence pursuant to Blakely v. Washington
(2004), 542 U.S. 296. The court denied the motion.
 {¶ 5} Appellant timely appealed, asserting four assignments of error for review. We address assignments of error one, two, and three together, to facilitate review.
 II. A. First Assignment of Error
"THE JURY VERDICT OF GUILTY OF THE OFFENSE OF FELONIOUS ASSAULT AS TO SOM HUY NGUYEN (INDICTMENT COUNT 12) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO ANDY TRAN."
 Second Assignment of Error
"THE JURY VERDICT OF GUILTY OF THE OFFENSE OF FELONIOUS ASSAULT AS TO TRINH D. HOANG (INDICTMENT COUNT 10) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO ANDY TRAN."
 Third Assignment of Error
"THE JURY VERDICT OF GUILTY OF FELONIOUS ASSAULT AS TO CHAU T. NGUYEN (INDICTMENT COUNT 9) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS TO ANDY TRAN."
 {¶ 6} In his first three assignments of error, Appellant challenges his conviction for felonious assault as to Chau T. Nguyen, Trinh D. Hoang, and Som Huy Nguyen. Specifically, Appellant asserts that the jury verdict of guilty on each of these charges was against the manifest weight of the evidence and not supported by sufficient evidence. We disagree.
 {¶ 7} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 8} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 9} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 10} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 11} Appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(2), which states, "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." A person can be convicted of the principal offense if it is established that he or she acted in complicity with another.State v. Riley, 9th Dist. No. 21852, 2004-Ohio-4880, at ¶ 36, citing State v. Herring, 94 Ohio St.3d 246, 251, 2002-Ohio-796. R.C. 2923.03(A)(2), complicity, provides, "No person, acting with the kind of culpability required of the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" In this case, the trial court provided an instruction on complicity to the jury.
 {¶ 12} R.C. 2901.22(B) provides:
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
Because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case. State v. Logan (1979),60 Ohio St.2d 126, 131. Culpable mental states can be established by circumstantial as well as direct evidence. State v. Kincaid,
9th Dist. No. 01CA007947, 2002-Ohio-6116, at ¶ 22, citingKreuzer v. Kreuzer (2001), 144 Ohio App.3d 610, 613.
 {¶ 13} Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." (Internal quotations omitted.) State v. Daniels (June 3, 1998), 9th Dist. No. 18761, at *2, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus. It is well established that circumstantial evidence and direct evidence possess the same probative value. State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, at *6, citing Jenks,
61 Ohio St.3d at paragraph one of the syllabus. "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." (Internal quotations omitted.) State v. Chisolm (July 8, 1992), 9th Dist. No. 15442, at *2, quoting Jenks,61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts.State v. Lott (1990), 51 Ohio St.3d 160, 168, citing Hurt v.Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329, 331. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusion in a case.Lott, 51 Ohio St.3d at 168.
 {¶ 14} The State produced the testimony of 18 witnesses, including that of each victim.
 {¶ 15} Steven Nguyen attended the party and testified that when he arrived at around 7:30 p.m., all the men were in the basement of the house. Tam Nguyen, Peter Tran, Vi Tran, and Appellant arrived later and entered the basement. He stated that Tam tried "to be the tough guy." The owner of the house attempted to pull Tam away from the crowd, but Tam "start[ed] to * * * pull the people, like he want[ed] to fight somebody in there." Steven observed Tam having a heated discussion with Trinh; then, he heard Tam's voice get louder. An individual named Tai Vo then threw a beer bottle at a wall. The bottle broke, and a fight ensued. Appellant and Peter Tran "all jump[ed] over" and Vi Tran (aka Pollo) "f[o]ught me in my — like in my right leg." Steven looked down at his leg and saw blood coming out from his leg. He felt "very hurt in [his] leg." Steven escaped upstairs, informed people of the mayhem, and someone dialed 9-1-1. Steven also sustained two stab injuries in his neck, chest, and right hand. While he did not actually see a knife, he stated that he "knew [he] got stabbed."
 {¶ 16} Ryan Nguyen testified via a qualified Vietnamese interpreter regarding the fight. Ryan was also stabbed. Ryan explained, "blood came shooting out and I got pain." He then observed Appellant run and "stab three other people." While he did not actually see the stabbing, Ryan testified that he heard "Minh, Chau, and Trinh say, `I got stabbed. I got stabbed. I got stabbed.'" Ryan eventually passed out and later found himself lying on the kitchen floor upstairs.
 {¶ 17} Truc Nguyen testified that he observed Tam, Peter, and Appellant attack an individual. He next saw the individual lying on the floor "with a lot of blood."
 {¶ 18} Ho Nguyen testified that he specifically observed Appellant continue to punch Chau after he had already been hurt.
 {¶ 19} Toan Quoc Chung testified that he observed Vi Tran attack Trinh and Appellant and Peter attack and "jump over Chau."
 {¶ 20} Minh Hoang, Trinh's brother, testified that when he was stabbed, he did see a knife being used.
 {¶ 21} Nga Mac testified, via interpreter, that she was at the party, "watching my children eating and watching people play card[s] and singing karaoke." She testified that she observed the following:
"[E]very one of the people's [sic] start crawling from down the basement up. * * *
"And then I saw the person crawling up and bleeding.
"And then I saw a knife, throw the knife in the sink. I saw that.
"* * *
"At that time, almost everybody got wounded except me, my husband, and couple other people tried to aid these people.
"And I saw people wound." [sic]
Nga described the knife to be a pocket knife, one that "can fold in and out." The knife was covered in blood. She saw Trinh come up from the basement. He pulled up his shirt and revealed a "big, long cut there." She also saw Chau come upstairs; when she asked him whether he was alright, Chau answered that he could not see anything. When the police arrived on the scene after the incident, she showed them the knife.
 {¶ 22} Somephat Manivong, Som Huy Nguyen's wife, testified that she saw a number of men ascend from the basement and lie on the kitchen floor, in a pool of blood.
 {¶ 23} Officer Michael Rinn from the City of Akron Police Department responded to the scene. He described the state of the kitchen as follows:
"The kitchen was basically blood covered. There was blood everywhere. On all the cabinets, the floor.
"I mean, we were actually almost slipping on the blood, it was that much over there."
 {¶ 24} Officer Peter Waters testified that when he arrived at the scene individuals on the first floor of the house informed him that there had been a fight, that people were injured, and that the person responsible may still be in the basement. When Officer Waters walked downstairs into the basement, he saw blood all over the floor and walls. He saw two Asian males sitting in the back corner. One was wearing a yellow jacket and was bleeding from his leg; the other also had blood on his person. Officer Waters was met by Appellant at the bottom of the basement steps. Officer Waters also saw another Asian male and a Caucasian male sitting on the floor. The individuals refused to respond to Officer Waters' questions and were uncooperative. Appellant even became hostile towards Officer Waters
 {¶ 25} Officer Scott Lietke testified that he saw a number of victims lying in the kitchen who had "severe lacerations and [were] bleeding badly." When he went downstairs he found Appellant, who appeared to be uninjured but possibly intoxicated.
 {¶ 26} Detective James Pasheilich testified regarding his interview with Vi Tran. Vi Tran informed him that he was stabbed. He also acknowledged the presence of a knife, stating that he was "able to knock the knife away from whoever had it in their hand. He's able to see it on the floor. He's able to pick it up and * * * stab people." Vi Tran explained that he was trying to protect Appellant, his brother. Detective Pasheilich also testified that during his interview with Appellant, Appellant stated that he was trying to protect his brother Vi. Detective Pasheilich testified that based on his experience over the years with victims who had been stabbed by knives, the wounds that he saw on the victims in this case were consistent with stab wounds. While a suggestion was made on cross-examination that the wounds were made by a long fingernail, perhaps that of Tam, Detective Pasheilich answered that this was "absolutely not" the case.
 {¶ 27} The State introduced into evidence the blood-covered knife, the bloody clothing of each victim and that of Appellant, a number of photographs that documented the injuries of each victim, and the medical records of each victim that indicated that the victims sustained stab wounds.
1. Chau T. Nguyen
 {¶ 28} Appellant argues that Chau's testimony regarding the attack was confusing and not credible. Appellant explains that Chau testified that he was not sure who actually stabbed him when he was attacked by Appellant and Peter Tran.
 {¶ 29} Chau testified that he arrived at the party around 9:00 p.m., and Minh, Trinh, Peter, Tam, Vi Tran, Ryan, Steven, and Appellant were already present in the basement. After several minutes he observed Tam stand up and yell at everyone and state that he wanted to "kick everybody [ass]." Tam then pulled a stair rail off the staircase and attempted to fight with Tai. Chau then testified as follows:
"I got attacked from Peter Tran and [Appellant]. They attack me. They went hit me.
"I feel hurt, but I didn't know what is in — on my belly. I got a hole in my belly and stuff on my hands."
Chau further testified:
"[Peter Tran] holding me, and I know [Appellant] attack me, too, but I don't know what they attack with.
"But I feel like every time they hit, I just, you know, kind of when it hit, I kind of pulled up a little bit
"And by that time, I didn't' know — realize — I didn't see no, like attack me, I don't feel any, like, hurting. But later on I feel like blood coming out."
Chau felt these stabbing "attacks" on his left arm, chest, abdomen, and right thigh. He also sustained cuts to the left side of his body, which he asserted were inflicted while Appellant and Peter were attacking him. Tam also contributed to the attack; he bit one of Chau's fingers and his face, and stabbed him in the lip. While he could not identify the object Tam used to cut his lip, he did "feel an object."
 {¶ 30} Chau testified that his arm had to be operated on and that it would take a year to recover. At trial, Chau testified that his arm was still numb. His abdomen was also operated on and part of his intestine removed as a result of this incident. His lip required several stitches.
2. Trinh Hoang
 {¶ 31} Appellant argues that this conviction should be overturned because Trinh never identified Appellant as the one that cut or stabbed him during the attack.
 {¶ 32} Trinh testified that he arrived at the party around 9:00 p.m. He also observed Tam yell and break off the stair rail. He heard Tam yell at Tai and state that he was going to stab Tai. Tai then threw down a beer bottle. Trinh testified that Appellant and Vi then started after him. Trinh hid behind Som. Trinh then ran around the room and at some point he was stabbed by Vi Tran under the armpit on the right side. Trinh saw that the weapon used was a knife. He also recognized that he was bleeding a lot. He testified that he had other wounds but that he did not know who stabbed him in those areas.
3. Som Huy Nguyen
 {¶ 33} Appellant argues that Som could not identify who stabbed him and that he could not testify that he saw a knife.
 {¶ 34} Som testified that when Minh, Chau, and Trinh arrived at the party, Tam, who was already present, started yelling and swearing. He saw Toan hold down Tam, but Tam still appeared angry at Minh, Chau, and Trinh. Eventually, Tam insisted that he "will get everybody in the party," that he would "kick their ass." He then observed Tai angrily tell Tam that he was young and that he was not being respectful, that this was a party. Tam them said that he would "`kick [his] ass, too.'" Tai then threw a beer bottle at a wall, and Tam subsequently broke off a stair rail from the staircase. Toan attempted to hold Tam back. Som then testified that the following ensued:
"I see * * * something attack Trinh, somebody attack Trinh. And Trinh, `Help me, Help [sic] me, help me.'
"* * * I saw Vi Tran and Andy attacking. And I say — I stop them. I say, `No, no.' I push them out.
"When I push Vi Tran and [Appellant] out, I feel in my belly, the hand hitting my belly.
"And after I push the Vi Tran and the [Appellant], and that time the owner of the house, Toan, he cannot hold the Tam no more. And he leave Tam out from his hand. Leave Tam out from his hand.
"And I see Tam jump in attack — jumping in attack.
"And I come, try to stop Tam. But that time Tam push me away and push me away. I cannot hold him no more. He too strong.
"I tell you, `Stop that.'
"And that time I look in my hand, I see my hand have blood.
"And after Tam pushed me away and Tam jump in attack, I saw Tam jump in attack Chau.
"That time Chau on the floor and all blood over. And I just can't — I can't stop no more.
"And I go upstair. And when I go upstair, I sit in the chair. And I see couple people calling 911.
"I sit in the chair. Couple minute later, I saw couple guy walk upstair and fall down in the kitchen. Blood all over.
"That moment the woman crying. The woman screaming. And I don't know what to do.
"I sit there. I feel very sad because the blood up like there. And I sit there and I got — like I sit and hold my hand in the chair.
"* * *
"And my wife took me in the car and took me home, you know.
"And then I got minor cut only. And she took me home.
"* * *
"She took me home. And on the way home, I tell — I sit in the — she driving. I sit in the back. I say, `How come my belly so hurt', you know.
"And we — when I come to my house and I — my belly, it cold. And I tell my wife. Took me inside the house and she look at my belly and say, `You got hurt in your belly really bad. You need to go hospital.'"
 {¶ 35} They drove to the hospital. Som stayed in the hospital for almost one full week. Som testified that at the time of trial, his stomach still hurt, and he still could not straighten his right hand. He explained that he was cut straight through to the tendon.
 {¶ 36} Based upon our thorough review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Appellant guilty of three counts of felonious assault. See Otten,33 Ohio App.3d at 340. Appellant was involved in the attack of each victim. During each respective attack, the victim sustained cuts and stab wounds. The jury could reasonably infer that each of the victims was stabbed during the attack. Furthermore, the jury could at the very least conclude that Appellant was complicit in the commission of felonious assault, based on the direct and circumstantial evidence presented at trial. See Riley at ¶ 36;Herring, 94 Ohio St.3d at 251.
 {¶ 37} We will not overturn the verdict because the jury chose to rely on certain testimony. As the fact finder, the jury was in the best position to evaluate the credibility of the witnesses and therefore was entitled to believe certain testimony over other. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, this Court will defer to the trier of fact on the issue of witness credibility. State v.Williams, 9th Dist. No. 21840, 2004-Ohio-4316, at ¶ 49.
 {¶ 38} Accordingly, we find that Appellant's convictions for felonious assault as to Chau Nguyen, Trinh Hoang, and Som Huy Nguyen were not against the manifest weight of the evidence.
 {¶ 39} Having found that Appellant's convictions were not against the manifest weight of the evidence, we also conclude that there was sufficient evidence to support the jury's verdict in this case with respect to the offenses. See Roberts, supra.
 {¶ 40} Appellant's first, second, and third assignments of error are overruled.
 B. Fourth Assignment of Error
"THE SENTENCE OF ANDY TRAN WAS BASED ON AN UNCONSTITUTIONAL STATUTE, 2929.14(B) ORC, AND IS THEREFORE VOID."
 {¶ 41} In his fourth assignment of error, Appellant challenges his sentence as being unconstitutional and argues that the case should be remanded for re-sentencing pursuant to Statev. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. At his sentencing hearing, Appellant raised a constitutional challenge to his sentence. Appellee concedes that Appellant should be re-sentenced. We agree with Appellant's argument.
 {¶ 42} In Foster, the Court found R.C. 2929.14(B) unconstitutional and excised this section from the statute. Id. at paragraphs one and two of the syllabus. In addition, the Court excised R.C. 2953.08(G) for the same reason. State v.Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 20, citing Foster at ¶ 97. Ultimately, the Court found that the defendant-appellants were entitled to a new sentencing hearing pursuant to the court's holdings. Foster at ¶ 105.
 {¶ 43} In the instant case, the trial court imposed non-minimum sentences pursuant to R.C. 2929.14(B). Thus, pursuant to Foster, we find that the imposition of the sentence in accordance with R.C. 2929.14(B) in this case was unconstitutional, and we remand the case to the trial court for a new sentencing hearing. Foster at paragraph one of the syllabus, following Apprendi v. New Jersey (2000), 530 U.S. 466
and Blakely, 542 U.S. 296.
 {¶ 44} Appellant's fourth assignment of error is sustained. We remand this case to the trial court for re-sentencing.
 III. {¶ 45} Appellant's first, second, and third assignments of error are overruled. Appellant's fourth assignment of error is sustained. Appellant's conviction in the Summit County Court of Common Pleas is affirmed, and Appellant's sentence is reversed. This cause is remanded for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Whitmore, P.J. Moore, J. concur.