[Cite as *State v. McCoy*, 2011-Ohio-6592.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    25584 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHAWN K. MCCOY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 09 09 2686 |

DECISION AND JOURNAL ENTRY

Dated: December 21, 2011

---

MOORE, Judge.

{¶1}    Appellant, Shawn McCoy, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    On September 14, 2009, McCoy was indicted on charges of trafficking in heroin in the vicinity of a school, in violation of R.C. 2925.03(A)(C)(6), a felony of the fourth degree, with an accompanying criminal forfeiture specification, and driving under suspension, in violation of R.C. 4510.11, a misdemeanor of the first degree.  The indictment resulted from an alleged sale of heroin from McCoy to Tamara Williams on the afternoon of August 31, 2009, in the parking lot of a Circle K gas station.

{¶3}    On August 9, 2010, a jury trial commenced.  After the defense rested, McCoy amended his plea to guilty on the driving under suspension charge.  Thereafter, the jury found McCoy guilty of the charge of trafficking in heroin within the vicinity of a school and found that

$80.00 was subject to criminal forfeiture. The trial court sentenced McCoy to eighteen months of incarceration.

{¶4} McCoy timely filed a notice of appeal and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED [] MCCOY'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29."

{¶5} In his sole assignment of error, McCoy argues that his conviction for trafficking in heroin was not supported by sufficient evidence and was against the manifest weight of the evidence. We do not agree.

Sufficiency of the Evidence

{¶6} A motion pursuant to Crim.R. 29 tests the sufficiency of the evidence presented by the state. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. Id. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. Id. at 390 (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶7} Circumstantial and direct evidence "posses the same probative value[.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. "Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for 'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.' (Internal quotations omitted.)" *State v. Tran*, 9th Dist. No. 22911, 2006-Ohio-4349, at ¶13, quoting *State v. Daniels* (June 3, 1998), 9th Dist. No. 18761, at *2.

{¶8} Here, McCoy challenges his conviction for trafficking in heroin within the vicinity of a school in violation of R.C. 2925.03(A)(C)(6), which provides:

"(A) No person shall knowingly do any of the following:

"(1) Sell or offer to sell a controlled substance;

"(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person. * * *

"(C) Whoever violates division (A) of this section is guilty of one of the following: * * *

"(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows: * * *

"(b) Except as otherwise provided * * *, if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the fourth degree[.]"

{¶9} At trial, the State provided the testimony of Tamara Williams, Detective Schmidt, Detective Danzy, Detective Williams, and R. Michael Velten. Ms. Williams testified that, on August 31, 2009, she called McCoy on his cell phone and expressed her desire to purchase heroin from him. The two agreed to meet at the Circle K gas station near East Exchange Street and Arlington Street in Akron, Ohio. Ms. Williams' friend drove her to Circle K in the friend's

gray and blue car, and her son accompanied them, seated in the backseat. The group pulled into the parking lot and waited about thirty minutes for McCoy to arrive. When he arrived, he approached the window to the front passenger side of the car, where Ms. Williams was seated. Through her open window, she gave McCoy $80.00, and he handed her what she believed to be heroin. After exchanging a greeting with Ms. Williams' son, McCoy walked away from the car, and Williams, her friend, and her son, drove out of the parking lot. Within a few minutes of leaving the parking lot, several police cars stopped the car in which Ms. Williams was riding. She discarded the heroin on the floor of the car by her feet. When she was arrested, she told the arresting officer that she had purchased the heroin from McCoy.

{¶10} Detective Schmidt of the Akron Police Department's Street Narcotics Uniformed Detail ("SNUD") testified that, at approximately 1:15 or 1:30 p.m., on August 31, 2009, he received a call from what he considered a reliable informant. The informant told Detective Schmidt that a drug deal was to take place at the Circle K on the intersection of East Exchange Street and Arlington Street. The informant further stated that the buyer would arrive in a gray Chrysler LeBaron to purchase drugs from a black male in the parking lot. Acting on this information, Detective Schmidt initiated surveillance of the Circle K. During this surveillance, he witnessed a gray LeBaron pull into the parking lot and park next to a gas pump. No one emerged from the car. Shortly thereafter, a gold Mercedes pulled into the parking lot behind the LeBaron. A black male, whom Detective Schmidt identified in court as McCoy, exited the Mercedes and walked to the front passenger window of the LeBaron. There, McCoy engaged in a hand-to-hand transaction with the front-seat passenger. Immediately thereafter, the LeBaron pulled out of the parking lot, and Detective Schmidt followed the LeBaron and called for uniformed officers to stop the car.

{¶11} Detective Schmidt identified State's Exhibit 1 as a map of the Circle K and the surrounding area. He identified the yellow outlined portion of the map as Circle K and the purple outlined portion of the map as Hope Academy, a chartered elementary school. Detective Schmidt stated that a blue half circle on the map represented the area of one thousand feet around Circle K, within which Hope Academy was located. Further, Detective Schmidt testified that he measured the distance from the Circle K to Hope Academy, which was 372 feet.

{¶12} Detective Danzy of the SNUD unit testified that, on August 31, 2009, he received information from Detective Schmidt regarding a drug transaction that occurred in the parking lot of Circle K. Detective Schmidt requested that Detective Danzy stop a LeBaron that had left Circle K. As Detective Danzy approached the vehicle, he noticed the front passenger making movements as Danzy initiated the overhead lights and siren. He approached the passenger side of the vehicle. Ms. Williams was there seated, and in plain view at her feet was a folded up piece of paper with some powder inside of and around it. Detective Danzy told Ms. Williams to exit the vehicle, placed her under arrest, and removed the paper and powder. After Detective Danzy recited to Ms. Williams her Miranda rights, she told him that she had bought heroin for $80.00 from a male named Shawn at the gas station. Detective Danzy identified State's Exhibit 4 as the powder substance that he tagged into evidence.

{¶13} Detective Williams of the SNUD unit testified that, on August 31, 2009, he was radioed to make a stop on an individual named Shawn McCoy, who was involved in a drug transaction. Detective Williams arrested McCoy outside of a vehicle parked at the Circle K. Detective Williams searched McCoy and found $200.00 on his person. Detective Williams identified State's Exhibit 5 as the money that he found on McCoy.

**{¶14}** R. Michael Velten, who works at the Ohio Bureau of Criminal Identification and Investigation and in the City of Akron's Drug Identification Unit, testified that he tested the powder that Detective Danzy tagged into evidence, which he identified as State's Exhibit 4. Based upon his testing, he found .13 grams of the substance, which he reported contained heroin.

**{¶15}** After eliciting testimony from the above witnesses, the State rested. Viewing the evidence in the light most favorable to the prosecution, we conclude that the State produced sufficient evidence to support the determination that McCoy knowingly sold heroin to Ms. Williams on August 31, 2009 for $80.00, and that such activity took place within the vicinity of a school. Accordingly, McCoy's first assignment of error, as it pertains to the sufficiency of the evidence, is overruled.

Manifest Weight of the Evidence

**{¶16}** McCoy further argues that his conviction was against the manifest weight of the evidence. When a defendant asserts that his conviction is against the manifest weight of the evidence,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

**{¶17}** In making this determination, this Court is mindful that "[e]valuating the evidence and assessing credibility are primarily for the trier of fact." *State v. Shue* (1994), 97 Ohio App.3d 459, 466, citing *Ostendorf-Morris Co. v. Slyman* (1982), 6 Ohio App.3d 46, 47 and *Crull v. Maple Park Body Shop* (1987), 36 Ohio App.3d 153, 154.

**{¶18}** Here, McCoy cites to inconsistencies in the testimony of the above individuals and himself in support of his argument. McCoy testified that, on the afternoon of August 31,

2009, he drove his children's mother's car to Circle K to get gasoline and a soft drink. Upon arriving at Circle K, he walked toward the store, but heard someone call his name. He turned and saw Ms. Williams' son, who was a neighbor of his, in the backseat of a car. He walked to the car, opened the back passenger's door, and leaned in to converse with her son. At no time that day had he previously spoken to Ms. Williams, and he had no drugs on his person and engaged in no sale of drugs to her. Instead, after greeting the occupants of the car and having a brief discussion with her son, he exited the vehicle, closed the door and went inside the store to make his purchases. Thereafter, while in the car ready to leave the parking lot, he was surrounded by officers and placed under arrest.

{¶19} Although inconsistencies existed in the testimony of the State's and the defense witnesses, "the jury is free to believe all, part, or none of the testimony of each witness[.]" *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, at ¶35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶35, citing *State v. Jackson* (1993), 86 Ohio App.3d 29, 33. We cannot say the jury's resolution of these inconsistencies was unreasonable. See *State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, at ¶18 citing *State v. Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, at ¶35 ("A conviction is not against the manifest weight because the jury chose to credit the State's version of events.").

{¶20} After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding McCoy guilty of trafficking in heroin.

{¶21} Accordingly, McCoy's first assignment of error, as it pertains to the manifest weight of the evidence, is overruled.

## III.

**{¶22}** McCoy's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

RHONDA L. KOTNIK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.