[Cite as *State v. DeWerth*, 2012-Ohio-1384.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 11CA0032-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SCOTT J. DEWERTH | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 10TRC03722 |

DECISION AND JOURNAL ENTRY

Dated: March 30, 2012

---

MOORE, Presiding Judge.

{¶1} Appellant, Scott DeWerth, appeals from the judgment of the Wadsworth Municipal Court. This Court affirms.

I.

{¶2} On August 14, 2010, Michelle Kollert was driving her car on Leatherman Road in Wadsworth, Ohio. As Ms. Kollert crested a hill, she approached an oncoming vehicle that had crossed left of center. Ms. Kollert veered to the right of the roadway to avoid impact; however, the driver's side mirrors of the two vehicles clipped, and Ms. Kollert's attempt to avoid collision caused her to lose control of her vehicle. Ms. Kollert's vehicle crossed the roadway, went off the left side of the road, collided with utility poles and came to rest in a residential yard. The driver of the oncoming vehicle left the scene. Shortly thereafter, police suspected Scott DeWerth as the other driver, and ultimately cited him for OVI in violation of R.C. 4511.19(A)(1), OVI in

violation of R.C. 4511.19(A)(1)(h)(1), driving left of center in violation of R.C. 4511.30, and failure to stop after an accident ("hit-skip") in violation of R.C. 4549.02.

{¶3}    On February 10, 2011, a jury trial commenced.  The jury found DeWerth guilty of both OVI charges and of the hit-skip charge.  The trial court merged the driving left of center charge into the first OVI charge.  At sentencing, the trial court merged the first OVI count with the second, and imposed sentence on the verdicts for the second OVI and the hit-skip.

{¶4}    DeWerth timely filed a notice of appeal and raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT AND THE CONVICTIONS THEREFORE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5}    In his sole assignment of error, DeWerth argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.  We do not agree.

Sufficiency of the Evidence

{¶6}    The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production.  *Id.* at 390 (Cook, J. concurring).  In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Circumstantial and direct evidence "possess the same probative value[.]" *Id.* at paragraph one of the syllabus. "Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." (Internal quotations omitted.) *State v. Tran*, 9th Dist. No. 22911, 2006-Ohio-4349, ¶ 13.

{¶7} Here, DeWerth challenges his conviction for OVI, in violation of R.C. 4511.19(A)(1)(h), which provides, "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, * * * [t]he person has a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath."

{¶8} DeWerth further challenges his conviction for failure to stop after an accident, in violation of R.C. 4549.02, which in part provides,

In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person driving or operating the motor vehicle, having knowledge of the accident or collision, immediately shall stop the driver's or operator's motor vehicle at the scene of the accident or collision and shall remain at the scene of the accident or collision until the driver or operator has given the driver's or operator's name and address and, if the driver or operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to any person injured in the accident or collision or to the operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision, or to any police officer at the scene of the accident or collision.

{¶9}   As part of its case in chief, the State provided the testimony of Ms. Kollert, Officer David Samic, and Trooper Alexander Tot.  Ms. Kollert testified that on August 14, 2010, she was driving on Leatherman Road.  She saw an oncoming car approaching, which appeared to be traveling somewhat left of the center lane markings.  She moved her car toward the right of her lane.  She then lost sight of the vehicle as it drove into a valley.   Ms. Kollert regained sight of the oncoming vehicle as both vehicles crested a hill, and at that time the oncoming vehicle was far left of center, substantially blocking her lane.  Ms. Kollert swerved toward the ditch on her right side.  Losing control of her car, she crossed the road, went off the left side of the road, hit two utility poles, and drove into residential yards.  Ms. Kollert described the oncoming vehicle as an older, dull, gray/blue vehicle, driven by someone with short hair who she assumed to be a male.  The oncoming vehicle left the scene.

{¶10}   Officer Samic of the Wadsworth City Police Department testified that he was on duty on August 14, 2010.  The officer was just north of Wadsworth when he received notice to be on the lookout for an older blue/gray vehicle that had fled the scene of an accident on Leatherman Road.  As he was driving back toward Wadsworth, the officer observed a "blue plume of grayish blue smoke."  The officer could smell burning rubber, and he could see fresh yaw marks on the road.  As he reached a turn in the road, he noticed a vehicle ahead stopped on the right of the road.  The vehicle had another "grayish bluish" plume of smoke surrounding it.  As he approached the vehicle, the officer could see a skid mark extending toward the vehicle, which ended precisely at the vehicle's rear tire.  The officer stopped behind the vehicle and noticed that it matched the "be on the lookout for" notice he had received.  The officer also determined that the time and location of the vehicle were consistent with where a vehicle that had left the accident could be located.  The vehicle then turned into a U-shaped driveway.  The

officer pulled into the other entranceway of the driveway. The driver and the officer exited their vehicles, but the driver continued into a home without seeming to notice the officer's presence. Officer Samic identified DeWerth as the driver he observed.

{¶11} Officer Samic further testified that DeWerth was staggering into the house, seeming to struggle to maintain his balance. It appeared to the officer that DeWerth's behavior was consistent with that of a person who is under the influence of alcohol. The area where Officer Samic observed DeWerth driving and DeWerth's home were located in Montville Township, and the officer contacted dispatch to request the County Sherriff's Office or the Montville Police Department to send assistance.

{¶12} Because Officer Samic was outside of his jurisdiction, he took on the role of an observer until officers within the jurisdiction arrived. While awaiting assistance, the officer observed DeWerth come out of the house and flail his arms up in the air and he then started to approach the cruiser. The officer felt that DeWerth had approached too closely, and the officer backed out of the driveway and drove across the street to another driveway. From this vantage point, the officer could keep visual contact with DeWerth's driveway, although several pine trees obstructed the officer's view of the home. The officer then heard the cracking of branches, and the officer positioned his spotlight toward the pine trees, where DeWerth was then standing, again flailing his arms in the air. The officer then moved further up the street as a safety precaution.

{¶13} After an officer from the Medina County Sheriff's Office arrived, both officers pulled their cruisers into DeWerth's driveway and knocked on DeWerth's door. DeWerth answered the door, and Officer Samic told DeWerth that he was there to ask him some questions, to which DeWerth responded, "I'm not the person. You have the wrong address," and slammed

the door. Officer Samic knocked again, and again DeWerth opened the door, said he was "not the guy," and shut the door. From these encounters, the officer noticed that DeWerth's speech was slurred and his eyes were glassy. DeWerth did not answer the door again after the officer knocked. Because he was outside of the Wadsworth Police Department's jurisdiction, Officer Samic left the location. However, shortly thereafter, Sergeant Neil of the Montville Township Police Department advised Officer Samic that DeWerth had been taken into custody, and Samic returned to the scene.

{¶14} Trooper Alexander Tot of the State Highway Patrol testified that, on August 14, 2010, he was dispatched to the scene of an accident on Leatherman Road in Wadsworth. There, the trooper examined the nature of the damage to the vehicle, from which he determined that Kollert's driver's side mirror had come into contact with the oncoming vehicle. There was a scuff mark on the shell of the mirror, and it was missing the glass. Trooper Tot learned that officers had located a potential suspect's vehicle, and so he went to DeWerth's home where the Montville Police had him in custody. When Trooper Tot opened the door of the Montville PD cruiser to speak with DeWerth, he "detected a strong odor of alcoholic beverage coming from his person. His eyes were really blood shot and glossy." DeWerth agreed to submit to a breath sample at the station. The breath sample results were entered into evidence, which showed a .176 reading.

{¶15} Trooper Tot further testified that, while he was at the DeWerth residence, he looked at DeWerth's vehicle and observed scuff marks on the driver's side mirror, and the mirror itself was missing a piece of glass. Trooper Tot testified that the height, pattern, and direction of this damage were consistent with the damage to Kollert's vehicle. The vehicle also matched the description Ms. Kollert had given of the fleeing vehicle.

{¶16} The above evidence, viewed in the light most favorable to the State, is sufficient for a reasonable jury to conclude that DeWerth was involved in the accident with Kollert on Leatherman Road in Wadsworth, Ohio, that he left the scene of the accident without providing the information as required by R.C. 4549.02, and that he was then operating his vehicle with an alcohol-breath concentration at or above the level prohibited by R.C. 4511.19(A)(1)(h). Accordingly, insofar as DeWerth's assignment of error pertains to the sufficiency of the evidence, it is overruled.

Manifest Weight of the Evidence

{¶17} DeWerth further argues that his convictions were against the manifest weight of the evidence. When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (1986). In making this determination, this Court is mindful that "[e]valuating the evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶18} At trial, DeWerth and his parents testified. DeWerth testified that he lives with his parents on Wadsworth Road in Montville Township. On the day at issue, DeWerth went to a friend's house at approximately 4:00 or 5:00 p.m. He then went to the store, bought some beer,

and picked up some potatoes from a local farmer. He returned home at approximately 6:30 p.m. He did not leave the house again, and at no point during that day was he on Leatherman Road.

{¶19} After returning home, DeWerth began preparing his house and yard for an upcoming family party while he drank beer and whiskey. He was in the house preparing something to eat when he heard a knock at the door, and when he answered the door, the officers asked if a "Shawn, Shane or Steve" was living there. DeWerth said there was not. DeWerth told them to leave his property, and he shut the door. He then called his parents, and while he was on the phone with them, he received a call from the police asking if he was going to come to the door. DeWerth opened the door, walked outside, and was handcuffed by police officers.

{¶20} DeWerth further testified that prior to the date at issue, the driver's side mirror of his vehicle was damaged while his car was parked on a road. The damage caused the center of the glass to fall out, and he had that glass in his possession at his house.

{¶21} DeWerth's father testified that, on August 14, 2010, he and his wife picked up his sister from the airport at 4:15. They then went to dinner and shopping. After dropping his sister off at another family member's house, they went to a gas station before heading to his home, arriving slightly after 10:00 p.m. When he approached his home, he noticed several police cars in the area with their overhead lights on. After getting out of his car, he noticed that officers were photographing his son's car. After officers explained why they were at his home, DeWerth's father explained that the damaged glass in the driver's side mirror of DeWerth's car was the result of an incident that had happened "previous months ago," and he had the missing glass in his possession.

{¶22} DeWerth's mother testified that on August 14, 2010, she and her husband picked up her sister-in-law at her cousin's house and went out to eat before driving her to the airport.

When they came home, there were police cars in front of her house. Officers advised that another car that had pulled into her driveway was involved in an accident. She then looked at the car and said that there was nothing wrong with it. The police directed her to the damaged mirror, and she advised them that the mirror was damaged previously and the pieces were behind the house.

{¶23} In his merit brief, DeWerth cites to inconsistencies present in the witnesses' testimony and the lack of direct evidence identifying DeWerth as the driver who fled the scene of the Leatherman Road accident. However, "the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). We cannot say the jury's resolution of the testimonial inconsistencies was unreasonable. *See State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, ¶ 18, citing *State v. Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, ¶ 35 ("A conviction is not against the manifest weight because the jury chose to credit the State's version of events."). Further, direct and circumstantial evidence possess the same probative weight. *Jenks*, 61 Ohio St. at paragraph one of the syllabus.

{¶24} Here, Ms. Kollert identified the fleeing vehicle as an older sedan, which was dull and bluish/grey in color. Officer Samic and Trooper Tot testified that DeWerth's vehicle matched this description, and Officer Samic testified that the location and time that he witnessed DeWerth driving his car were consistent with that of where the fleeing vehicle could then be located. Trooper Tot confirmed that the damage to Kollert's vehicle from where it made impact with the fleeing vehicle was consistent with the damage to DeWerth's vehicle. Further, Officer Samic testified that DeWerth was stumbling and did not appear to notice his presence when he exited his vehicle in his driveway, despite their close proximity to one another at that time.

DeWerth then behaved in ways concerning the officer by twice approaching the officer with his hands raised and "flailing" in the air. The officer noted that DeWerth's conduct was consistent with that of a person who was under the influence of alcohol. Based on Officer Samic's and Trooper Tot's testimony, significant circumstantial evidence existed from which it could reasonably be inferred that DeWerth was the driver of the vehicle that caused Ms. Kollert to drive off of the roadway and that his blood alcohol content was at or above the legal limit when the accident occurred. Thus, after reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding DeWerth guilty of OVI and hit-skip.

{¶25} Accordingly, DeWerth's assignment of error, as it pertains to the manifest weight of the evidence, is overruled.

### III.

{¶26} DeWerth's assignment of error is overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, J.
DICKINSON, J.
CONCUR.

APPEARANCES:

DAVID V. GEDROCK, Attorney at Law, for Appellant.

PAGE C. SCHROCK, III, Assistant Law Director, for Appellee.