[Cite as *State v. Grossniklaus*, 2012-Ohio-2560.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 11CA0045 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| HANS GROSSNIKLAUS | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 11-CR-0007 |

DECISION AND JOURNAL ENTRY

Dated: June 11, 2012

MOORE, Judge.

{¶1}   Appellant, Hans Grossniklaus, appeals from the judgment of the Wayne County Common Pleas Court.  This Court affirms.

I.

{¶2}   On December 25, 2010, Hans Grossniklaus and Treasa Rush Dollman were together at an apartment on East Bowman Street in Wooster, Ohio.  The two engaged in an argument, during which Dollman initiated calls to 9-1-1.  Ultimately, Dollman reported to police officers that Grossniklaus had pushed her into a closet and choked her during their dispute.

{¶3}   The Wayne County Grand Jury indicted Grossniklaus on one count of domestic violence in violation of R.C. 2919.25(A).  Grossniklaus pled not guilty, and the case proceeded to jury trial.  The jury found Grossniklaus guilty, and the trial court sentenced him to twelve months of incarceration.  Grossniklaus timely filed a notice of appeal and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR NO. 1**

[GROSSNIKLAUS'] CONVICTION FOR DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} In his first assignment of error, Grossniklaus argues that his conviction was against the manifest weight of the evidence. We do not agree.

{¶5} When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶6} Here, Grossniklaus was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." At trial, Grossniklaus argued that any injury that he may have caused to Dollman was done in self-defense. Self-defense is an affirmative defense on which the defendant bears the burden of proof by a preponderance of the evidence. *State v. Tannery*, 9th Dist. No. 3258-M, 2002-Ohio-2662, ¶ 21, citing *State v. Martin*, 21 Ohio St.3d 91 (1986), syllabus, *aff'd, Martin v. Ohio*, 480 U.S. 228 (1987).

To establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm.

*Tannery* at ¶ 21.

{¶7} On appeal, Grossniklaus limits his argument to the weight of the evidence establishing the element of knowingly causing physical harm and to the weight of the evidence of establishing self-defense. Both arguments pertain to the differing versions of events set forth by Dollman and Grossniklaus at trial.

{¶8} As part of the State's case-in-chief, Dollman testified. Dollman acknowledged that she has two prior convictions for theft and one prior conviction for misuse of a credit card. As to the events of December 25, 2010, Dollman testified that she and Grossniklaus were engaged in an intimate relationship and were living together in the East Bowman Street apartment. Dollman was aware, however, that Grossniklaus had become involved with another woman, whom he considered his girlfriend. That morning, Grossniklaus left the apartment, and, while he was gone, he called Dollman regarding a telephone conversation he had just had with his girlfriend. Dollman and Grossniklaus began arguing, and Dollman told Grossniklaus "take his stuff and leave[.]" Shortly after this, Grossniklaus arrived back at the apartment, but Dollman was afraid to let him inside because he was angry and had previously harmed her. Grossniklaus forced open the door, breaking the lock's catch mechanism and dislodging the door chain.

{¶9} The two continued arguing, and Dollman again told Grossniklaus "to get his stuff and leave." When he refused she began throwing some of his belongings on the lawn. She also dialed 9-1-1, although she did not intend to submit the call and, instead, just "wanted to scare

him so he would go because [she] was scared of him." However, the call went through and an operator called back. Dollman told the operator that her granddaughter had inadvertently placed the call, and she hung up. Dollman and Grossniklaus continued to argue, and Grossniklaus threw Dollman down. Dollman again called 9-1-1 but hung up. An operator called her back, and she advised the operator that nothing was wrong, but a few minutes later a police officer arrived at the apartment. At that time Grossniklaus was present in the apartment but out of view of the officer, and Dollman told the officer that nothing was wrong and she was fine. Grossniklaus left, and Dollman re-chained the door, but Grossniklaus returned a second time, broke the chain, and again gained entry into the apartment.

{¶10} Grossniklaus and Dollman again began arguing, and Grossniklaus destroyed Dollman's jacket by cutting it apart with a pair of scissors. The arguing escalated into Grossniklaus pushing Dollman into a closet door and choking her. While Grossniklaus was choking her, Dollman struck him in the head with a portable telephone in an effort to get him to release her. Eventually, Grossniklaus left, and Dollman called 9-1-1 and reported the attack.

{¶11} Officer Thomas Webber of the Wooster Police Department testified that he was twice dispatched to the Bowman Street apartment on December 25, 2010. When the officer first arrived, Dollman told him that she was fine and the calls to 9-1-1 were placed by mistake. When the officer inquired about the broken door, she explained that the door was broken by her and her daughter when they were trying to get into the apartment. The officer observed no one in the apartment and left. When the officer arrived at the apartment the second time, Dollman reported to him that she had been untruthful when he was last there because she was frightened of repercussions by Grossniklaus. Dollman told the officer that Grossniklaus had pushed her and choked her but declined to provide a written statement. At that time, the officer observed a

bruise on Dollman's right elbow, a scratch on her right forearm, abrasions on her right hand, and redness on her neck. The back door to the apartment was damaged, and a coat was cut apart and lying on the floor.

{¶12} Grossniklaus testified on his own behalf at trial. Grossniklaus stated that he was at the Bowman Street apartment on December 25, 2010, but he left the apartment in the morning so that he could speak with his girlfriend on the telephone. His girlfriend was upset because she was informed that he had been out with Dollman on the previous night. He called Dollman and told her about the conversation, and Dollman swore at him and hung up the phone. When he returned to the apartment, Dollman would not let him inside and, instead, came to the door and told him he would not get his possessions back. He then damaged the door trying to get inside the apartment to retrieve his belongings. However, the chain on the door was still latched, and Dollman came to the door and dropped the chain. They then started arguing because Dollman would not give him his laptop or his two iPods. Dollman began throwing some of his possession in the snow and telling him to leave. He did not leave because he wanted to obtain his belongings.

{¶13} While they were arguing, Dollman observed an officer coming to the apartment and told Grossniklaus to go to the living room, which he did. The officer left, and they again began arguing. Grossniklaus took Dollman's coat and held a knife to it and told her to give him his stuff. She told him he would never get his laptop, and he then tried to pierce the coat with his knife, but it did not work. He then grabbed some scissors and cut up the coat. After that, Dollman threw more of his possession onto the lawn.

{¶14} While arguing, Dollman struck Grossniklaus in the head with a cordless phone. He attempted to block the strikes and made contact with her right arm but did not intentionally

injure her. He was able to subdue Dollman by pressing down her arms and placing her on the bed. At no time did he shove her, put her in a headlock, or choke her.

{¶15} Attorney Michael Ash also testified on behalf of the defense. Ash stated that he previously represented Grossniklaus. Prior to a hearing, Ash asked Dollman if she had been in personal contact with Grossniklaus within the time-span of approximately one week prior to the hearing. Dollman told Ash that she had been in personal contact with Grossniklaus, but, when she took the stand at the hearing, she testified that she had no such personal contact with Grossniklaus. Because Ash believed that the conversation with Dollman could potentially cause him to become a witness in this matter, he ceased his representation of Grossniklaus.

{¶16} In his merit brief, Grossniklaus first argues that Dollman's testimony lacked credibility. In support, Grossniklaus cites Dollman's previous convictions, the disparate reports she provided to Officer Webber when he twice arrived at the apartment, and the testimony of Ash pertaining to Dollman's testimony at the preliminary hearing. Grossniklaus further argues that the manifest weight of the evidence demonstrated that he was acting in self-defense and cites his testimony in support.

{¶17} Although the witnesses' testimony presented alternate versions of events, "the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). This is because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, ¶ 30 quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). We cannot say the jury's resolution of the testimonial inconsistencies was unreasonable. *See State v. Peasley*, 9th Dist.

No. 25062, 2010-Ohio-4333, ¶ 18, citing *State v. Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, ¶ 35 ("A conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events."). Further, the jury "has the right to place considerable weight on the testimony of the victim." *State v. Felder*, 9th Dist. No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992).

{¶18} After reviewing the entire record, weighing the inferences, and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in determining that Grossniklaus knowingly caused physical harm to Dollman and that he did not do so in self-defense. Accordingly, Grossniklaus' first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY ADMITTING THE JANUARY 3, 2011 PHOTOGRAPHS INTO EVIDENCE.

{¶19} In his second assignment of error, Grossniklaus argues that the trial court erred by admitting certain photographs into evidence. We disagree.

{¶20} Trial courts possess broad discretion in determining the admissibility of evidence. *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984), citing *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). Thus, this Court will not overturn such a determination in the absence of an abuse of discretion that resulted in material prejudice to the defendant. *State v. Ristich*, 9th Dist. No. 21701, 2004–Ohio–3086, ¶ 9. An "abuse of discretion" implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶21} The rules of evidence generally permit admission of all relevant evidence. Evid.R. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "A photograph is admissible into evidence if it is authenticated or identified as a fair and accurate representation of what it is purported to depict." (Citations omitted.) *State v. Baker*, 9th Dist. No. 21414, 2003-Ohio-4637, ¶ 17.

{¶22} At trial, Officer Webber testified that, on January 3, 2011, he was asked to obtain a written statement from Dollman concerning the December 25, 2010 incident and to obtain some follow-up photographs. In doing so, he observed that Dollman's injuries had displayed bruising that was not apparent on the date of the incident, and the bruising corresponded in location with the scratches and redness that he had observed on December 25.

{¶23} During Dollman's testimony, she identified the pictures of her injuries which were taken by Officer Webber on December 25, 2010 and January 3, 2010. Dollman testified that the injuries visible in photographs from both dates displayed the injuries she received as a result of Grossniklaus pushing and choking her on December 25, 2010.

{¶24} The State submitted the photographs taken on January 3, 2011, and the defense objected to the admission of these photographs, arguing that there was no foundation that the photographs displayed injuries that had occurred nine days prior. The trial court overruled the objections and admitted the photographs into evidence.

{¶25} On appeal, Grossniklaus argues that, because the January 3, 2011 pictures taken by Officer Webber display alleged injuries to Dollman observed nine days after the date at issue, it cannot be demonstrated that the injuries resulted from the purported attack. However, because

Dollman authenticated the pictures as displaying the injuries caused by Grossniklaus on December 25, 2011, Grossniklaus' argument lacks merit, and his second assignment of error is overruled.

## III.

{¶26} Accordingly, Grossniklaus' first and second assignments of error are overruled, and the judgment of the Wayne County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

BRIAN L. SUMMERS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and JOHN WILLIAMS, Assistant Prosecuting Attorney, for Appellee.