[Cite as *In re K.L.F.*, 2015-Ohio-3863.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.L.F.

C.A. No.     27516

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DL 14-04-000554

DECISION AND JOURNAL ENTRY

Dated: September 23, 2015

MOORE, Judge.

{¶1}    The minor child, K.L.F. appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division. This Court affirms.

I.

{¶2}    In 2014, complaints were filed with the trial court alleging that K.L.F. was a delinquent child for his purported involvement in a large fight at Kenmore High School, which acts were sufficient to establish the elements of riot as defined in R.C. 2917.03, aggravated riot as defined in R.C. 2917.02, and assault as defined in R.C. 2903.13(B). Following an adjudicatory hearing, the juvenile court dismissed the riot and assault complaints, and found K.L.F. delinquent on the basis of the aggravated riot complaint. The court imposed dispositional orders in an order dated September 16, 2014.

{¶3}   K.L.F. timely filed a notice of appeal, and he now presents three assignments of error for our review.   We have rearranged and consolidated certain assignments of error to facilitate our discussion.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED K.L.F.'S CRIM.R. 29(A) MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR AGGRAVATED RIOT.

{¶4}   In his second assignment of error, K.L.F. argues that his delinquency finding was not supported by sufficient evidence.  We disagree.

{¶5}   "It is well established that proceedings in juvenile court are civil in nature." *In re T.A.F.*, 9th Dist. Medina No. 09CA0046-M, 2010-Ohio-3000, ¶ 22, citing *In re Agler*, 19 Ohio St.2d 70, 74 (1969).  "However, due to the inherent criminal aspects of delinquency proceedings, the state must prove juvenile delinquency beyond a reasonable doubt." *In re T.A.F.* at ¶ 22.  The issue of whether a juvenile delinquency adjudication is supported by sufficient evidence is a question of law, which we review de novo.  *In re T.J.*, 9th Dist. Summit No. 27269, 2014-Ohio-4919, ¶ 19; *see State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52.  When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Thompkins* at 390 (Cook, J. concurring).  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6}   Here, K.L.F.'s delinquency finding was based upon a violation of R.C. 2917.02(A)(2), which prohibits aggravated riot.  R.C. 2917.02(A)(2) provides that "[n]o person

shall participate with four or more others in a course of disorderly conduct in violation of section 2917.11 of the Revised Code * * * [w]ith purpose to commit or facilitate the commission of any offense of violence[.]"  R.C. 2917.11(A) provides:

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
>
> (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;
>
> (3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;
>
> (4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;
>
> (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

Pursuant to former R.C. 2901.22(C), applicable here, a person acts recklessly when, "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶7}    At trial, the State presented the testimony Cheryl Marez, Officer Kevin Cooper, and Lieutenant Brian Simcox.  Ms. Marez testified that she is a teacher at Kenmore High School. On April 11, 2014, she was in her classroom on the second floor, when she heard commotion in the hallway, where students were fighting.  Upon entering the hallway, she saw another fight was also taking place in the stairway between K.L.F. and another boy.  The other boy was on K.L.F., gouging K.L.F.'s eyes.  A girl was trying to pull the other boy off of K.L.F., and Ms. Marez attempted to pull them apart as well.  At one point, Ms. Marez successfully separated K.L.F. and

the other boy, but the other boy then again tackled K.L.F., and they returned to fighting. Unsuccessful in her efforts to break up the fight, Ms. Marez returned to her classroom.

{¶8} Officer Cooper testified that he is employed with the City of Akron Police Department as a School Resource Officer stationed at Kenmore High School. At 9:20, shortly after the bell rang to signal the beginning of second period, a teacher approached him with a student and informed him that she had learned of Facebook postings concerning something bad happening that day at the school. Very shortly thereafter, he heard a commotion on the second floor. Officer Cooper and Lieutenant Simcox, who was also working at the school, took the elevator to the second floor. When the doors opened, there was "chaos" on the floor: sixty or seventy people were in the hallway, students were engaged in physical fighting in front of the elevator, and there was a security guard and a couple of teachers trying to break up fights. Officer Cooper and Lieutenant Simcox handcuffed and secured the two students who were fighting in front of them. Officer Cooper saw a child, whom he did not recognize as a student at Kenmore, in the hallway, and he grabbed the boy, and prepared to handcuff him, as he took him down the hall. As they were walking, the boy was making derogatory comments directed toward K.L.F. K.L.F. was "mouthing too," but the officer could not hear what K.L.F. was saying because the child he was escorting was screaming, and there continued to be chaos in the hall. K.L.F. was moving toward the officer and the boy, but Officer Cooper continued to walk the boy down the hallway, and after that he did not see what happened with K.L.F.

{¶9} Lieutenant Simcox testified that, on the morning at issue, he was working at Kenmore High School with Officer Cooper. He then heard a call on the radio about a fight at the school. After seeing the fight on the school cameras on the second floor, he got on an elevator with Officer Cooper to go to the second floor. When the doors opened, it was chaos. A teacher

had grabbed a child and turned him over to Lieutenant Simcox, who handcuffed that child, handed him off to someone else, and went into the fight to try to break it up. He approached the affray behind K.L.F., and Lieutenant Simcox believed that K.L.F. was headed into the commotion toward another child that was trying to break free from a staff member. The lieutenant "reached out and kind of grabbed [K.L.F.] by the belt or the pant[s]." At that time, Lieutenant Simcox was saying "no" and "police," and there was a lot of yelling and screaming in the hallway. When the other child "was breaking free," K.L.F. "tensed up[.]" The lieutenant explained that by "tensed up[,]" he meant that K.L.F was trying to move forward as the lieutenant was trying to hold him back. At that point, Lieutenant Simcox put K.L.F. into a headlock. After the lieutenant pulled K.L.F. away in the headlock, K.L.F. did not resist or fight him.

{¶10} The court admitted into evidence a copy of security video footage of the second floor hallway of Kenmore High School on the morning at issue. Each of the State's witnesses viewed the video, and attempted to point out their involvement. Although this Court can discern, based upon the video and the testimony, some of K.L.F.'s actions in the hallway, there is no video footage of K.L.F. in the stairwell.

{¶11} In his merit brief, K.L.F. has combined his argument of his second and third assignments of error in contravention of App.R. 16(A)(7). Nonetheless, we have reviewed the record, viewing the evidence produced at trial in the light most favorable to the State. In doing so, we conclude that the evidence, particularly the testimony of Lieutenant Simcox, and reasonable inferences that can be drawn from this testimony, provided sufficient evidence that K.L.F. was actively seeking to engage in a physical altercation with the child that was trying to break free of restraint in the hallway. Accordingly, the State produced sufficient evidence to

demonstrate that K.L.F. participated with four or more others "in a course of disorderly conduct in violation of section 2917.11 of the Revised Code * * * [w]ith purpose to commit or facilitate the commission of an[] offense of violence" based upon his actions taken in the hallway as relayed by Lieutenant Simcox and as seen on the video footage admitted into evidence. R.C. 2917.02(A)(2).

{¶12} Therefore, K.L.F.'s second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT'S FINDING THAT K.L.F. DID NOT ACT IN SELF-DEFENSE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR III

K.L.F.'S CONVICTION FOR AGGRAVATED RIOT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} In his first and third assignments of error, K.L.F. argues that his delinquency finding was against the weight of the evidence, and, specifically in his first assignment of error, he maintains that the weight of the evidence established that he acted in self-defense. We disagree.

{¶14} When a juvenile asserts that his delinquency adjudication is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [delinquency adjudication] must be reversed and a new trial ordered.

*In. re: T.A.F.*, 2010-Ohio-3000, at ¶ 28, quoting *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "In making this determination, this Court is mindful that evaluating the evidence and assessing credibility are primarily for the trier of fact." (Quotations and citations omitted.) *State v. Persinger*, 9th Dist. Lorain No. 13CA010397, 2014-Ohio-4125, ¶ 13.

**{¶15}** Here, K.L.F. advanced the affirmative defense of self-defense, on which he bore the burden of proof by a preponderance of the evidence. *State v. Grossniklaus*, 9th Dist. Wayne No. 11CA0045, 2012-Ohio-2560, ¶ 6, citing *State v. Tanner*, 9th Dist. Medina No. 3258-M, 2002-Ohio-2662, ¶ 21, citing *State v. Martin*, 21 Ohio St.3d 91 (1986), syllabus.

> To establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm.

*Grossniklaus* at ¶ 6, quoting *Tanner* at ¶ 21.

**{¶16}** At the adjudicatory hearing, K.L.F. testified in his own defense. He maintained that, on the morning at issue, he was walking to his second period class, and he saw the commotion in the hall on the second floor. While attempting to walk past the affray, two Kenmore High School students and another child, who was trespassing at the school, were directing their attention toward K.L.F. When K.L.F. reached the door of the stairwell, the trespasser attacked him. K.L.F. then starting fighting with one of the school's students on the landing in the stairwell. He recalled that, at some point, Ms. Marez tried to break up the fight. Eventually, he was able to get up, and he was "rushed" by a large group of people back out into the hallway. As he was coming out of the stairwell, he was again attacked by the trespasser, who hit him in the back of the head. K.L.F. stated that he "remember[ed] getting hit in the back of the head and turning around and seeing that person running out the door and [he] went after that person."

**{¶17}** K.L.F. further testified that, after returning to the hallway, he saw the trespasser who had attacked him. K.L.F.'s cousin put his arm around K.L.F., and he was trying to keep K.L.F. alongside the wall, away from the fight. At some point, an officer had a hold of K.L.F.

K.L.F. recalled that the trespasser, at that point, was being held by another police officer. When asked if he lunged toward the trespasser, K.L.F. responded, "I wouldn't call it a lunge. I tried but, no." K.L.F. said that his actions at that point were "just out of anger trying to get to him."

{¶18} The trial court concluded that K.L.F. acted in self-defense in the stairwell, but, assuming that self-defense was an appropriate defense to aggravated riot in this case, he did not act in self-defense in the hallway when he attempted to reengage in the altercation with the trespasser.

{¶19} On appeal, K.L.F. argues that he was under constant attack during the entirety of the melee at the school and that he was not an aggressor at any point during this incident. Therefore, he maintains that he did not act to commit an offense of violence, and he acted in self-defense. However, K.L.F.'s own testimony could reasonably indicate that K.L.F. *sought out* the trespasser because he was "trying to get to him" because he was angry after the stairwell attack. K.L.F. testified, and the video confirms, that, after returning to the hallway, K.L.F. was restrained by another individual, and then by Lieutenant Simcox, as K.L.F. attempted to move toward the commotion. Our review of the record indicates that this is not the exceptional case where the evidence weighs heavily against the conviction for aggravated riot.

{¶20} Further, from the evidence presented on self-defense, assuming without deciding that it is an appropriate defense to this aggravated riot charge, we cannot say that this is the exceptional case where the evidence weighed heavily in favor of self-defense. The court could have concluded from K.L.F.'s testimony that he returned to the hall and attempted to reach his attacker in order to engage in a physical confrontation in retaliation for the earlier attack. Therefore, the court reasonably could have determined that K.L.F. had become an aggressor in the hallway after the stairwell fight had broken off, that K.L.F. did not have a reasonable and

honest belief that his conduct in the hallway was necessary to defend himself against the imminent use of unlawful force, or that he had exceeded the conduct necessary to defend himself from imminent threat. *See Tanner,* 2002-Ohio-2662, at ¶ 21. *See also State v. Dukles*, 9th Dist. Medina No. 12CA0100-M, 2013-Ohio-5263, ¶ 29-30.

**{¶21}** Accordingly, K.L.F.'s first and third assignments of error are overruled.

III.

**{¶22}** K.L.F.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

MICHAEL J. WARTKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RACHEL M. RICHARDSON, Assistant Prosecuting Attorney, for Appellee.